# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN ALEXANDER, ) | |
|     Plaintiff, ) | Civil Action No. 13-21Erie |
| ) | |
| v. ) | |
| ) | |
| JOHN CAMPBELL, ) | Magistrate Judge Baxter |
|     Defendant. ) | |

## MEMORANDUM OPINION AND ORDER[1]

M.J. Susan Paradise Baxter

    Plaintiff, currently a state prisoner, brought this civil rights action under 42 U.S.C. § 1983 on January 18, 2013. Plaintiff claims that Defendant John Campbell, a correctional officer, used pepper spray in a cell adjacent to Plaintiff's cell without turning off the ventilation system. As the pepper spray entered Plaintiff's cell, he began to sneeze and cough up blood, and he became dizzy and had difficulty breathing. Plaintiff alleges that Defendant Campbell denied his repeated requests for medical attention. Plaintiff also claims that he requested that he be allowed to leave his cell for fresh air and be given clean clothes and clean bed linens – both requests were denied by Defendant Campbell.

    Plaintiff raises two separate claims for relief under the Eighth Amendment:

1. The actions and/or inactions of Defendant Campbell in releasing OC [pepper spray] in the Restricted Housing Unit without first turning off the ventilation system which caused Plaintiff to suffer from aggressive sneezing, violent coughing including coughing up blood, dizziness, and breathing difficulties constitutes cruel and unusual punishment. […]

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including the entry of a final judgment. See ECF Nos. 4, 13.

> 2. The actions and/or inactions of Defendant Campbell in delaying medical treatment for Plaintiff's serious medical needs for nearly four hours constitutes deliberate indifference. […]

ECF No. 3, page 4. This Court liberally construes the first of Plaintiff's claims as a conditions-of-confinement claim, not as an excessive use of force claim.

Defendant has filed a motion to dismiss and Plaintiff has filed a brief in opposition to the pending dispositive motion. ECF Nos. 10, 14, respectively. The issues are fully briefed and are ripe for disposition by this Court.

### A. Standards of Review

#### 1) *Pro Se* Litigants

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Dep't of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard);

Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court may consider facts and make inferences where it is appropriate.

### 2) Motion to dismiss pursuant to Rule 12(b)(6)

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937 (2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

A Court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). See also McTernan v. City of York, Pennsylvania, 577 F.3d 521, 531 (3d Cir. 2009) quoting Iqbal, ___ U.S. at ___, 129 S.Ct. at 1949 ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556, citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004). Although the United States Supreme Court does "not require heightened fact pleading of

specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D. Del.) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556 n.3.

The Third Circuit has expounded on the Twombly/Iqbal line of cases:

> To determine the sufficiency of a complaint under Twombly and Iqbal, we must take the following three steps:
>
>> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) quoting Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).

### 3) Motion for summary judgment pursuant to Rule 56

The parties have submitted evidence in support of their respective arguments as to the issue of exhaustion of administrative remedies. Therefore, this Court will convert that part of the motion to dismiss into a motion for summary judgment pursuant to Rule 56. See Burns v. Harris County Bail Bond Bd., 139 F.3d 513, 517 (5th Cir. 1998) ("When matters outside the pleadings are presented to and not excluded by the district court, the district court must convert a motion to dismiss into a motion for summary judgment."); Greer v. Smith, 2003 WL 1090708,

at *1 (3d Cir. 2003) ("the District Court considered material outside of the pleadings and, therefore, should have converted the motion for dismissal to a summary judgment motion, allowing the plaintiff an opportunity for appropriate discovery and a reasonable opportunity to present all material made pertinent to the motion.").

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When applying this standard, the court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004). The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or

suspicions to show the existence of a genuine issue." Garcia v. Kimmell, 2010 WL 2089639, at *1 (3d Cir. 2010) quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

### B) The Prison Litigation Reform Act

#### 1) The Exhaustion Requirement

Defendant Campbell moves to dismiss based upon Plaintiff's failure to exhaust his administrative remedies in accordance with the exhaustion requirements of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), which provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until such administrative remedies as are available are exhausted.

Id. The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").

The PLRA's exhaustion requirement "is a non-jurisdictional prerequisite." Small v. Camden County, 728 F.3d 265, 270 n.3 (3d Cir. 2013).[2] The requirement that an inmate exhaust

---

[2] "As such, just as subject matter jurisdiction, personal jurisdiction, and venue, exhaustion is a 'threshold issue that *courts* must address to determine whether litigation is being conducted in the right forum at the right time.'" Small, 728 F.3d at 270, quoting Dillon v. Rogers, 596 F.3d 260, 272 (5th Cir. 2010). See also Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that §1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002); Cutter v. Wilkinson, 544 U.S. 709, 723 n.12 (2005) (noting that the PLRA requires that "a prisoner may not sue under RLUIPA without first exhausting all available administrative remedies."); Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement).

The PLRA also requires "proper exhaustion" meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of that grievance system. Woodford v. Ngo, 548 U.S. 81, 87-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." Id. at 83.[3]

### 2) The Administrative Process Available to State Inmates

So then, no analysis of exhaustion may be made absent an understanding of the administrative process available to state inmates. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. at 218. See also Spruill, 372 F.3d at 231 (having

---

[3] See also Spruill v. Gillis, 372 F.3d 218, 228-29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion) (" Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.").

7

concluded that the PLRA includes a procedural default component, the Court then indicated that "prison grievance procedures supply the yardstick for measuring procedural default.").

The DC-ADM 804 grievance system, available to state prisoners, consists of three separate stages. First, the prisoner is required to timely submit a written grievance for review by the facility manager or the regional grievance coordinator within fifteen days of the incident, who responds in writing within ten business days. Second, the inmate must timely submit a written appeal to intermediate review within ten working days, and again the inmate receives a written response within ten working days. Finally, the inmate must submit a timely appeal to the Central Office Review Committee within fifteen working days, and the inmate will receive a final determination in writing within thirty days. See Booth v. Churner, 206 F.3d 289, 293 n.2 (3d Cir. 1997), aff'd. 532 U.S. 731 (2001). Furthermore, the Department of Corrections grievance policy requires responsible individuals to be named or identified in the grievance. Spruill, 372 F.3d at 234.

### 3) Analysis of Exhaustion

Defendant Campbell argues that Plaintiff has not fully exhausted his claims as he did not properly appeal his grievance through the final level of review to the Central Office. In opposition, Plaintiff argues that he attempted to utilize all the administrative remedies which were available to him.

The record before this Court reflects that Plaintiff filed the Grievance No. 407722 on April 8, 2012. ECF No. 10-1, page 2. Plaintiff's grievance was denied, he appealed to Facility Manager Coleman and the appeal was denied. Following Coleman's denial, Plaintiff filed an appeal of that decision to Central Office, but failed to include all of the required documentation. By a letter dated July 13, 2012, Central Office informed Plaintiff of the missing documents and

directed that, in order to effectuate final review of his grievance, he must send the documents within 15 days. ECF No. 10-1, Declaration of Dorina Varner, Chief Grievance Officer, page 19. When Central Office had not received the necessary documents by August 29, 2012, Plaintiff's final appeal was "dismissed" due to the fact that he had "not provided this Office with required documentation for proper review." Id.[4]

In support of his argument that he exhausted all his available administrative remedies, Plaintiff has produced a Request to Staff Member dated July 17th requesting copies of the required documents necessary to properly exhaust his grievance at the final level. ECF No. 14, page 7. The response by a staff member (whose signature is illegible) indicates: "due to your level 5 housing, you are not permitted use of the copier. Copies of your documents were obtained and we have forwarded them to the Chief Grievance Officer on your behalf." Id. Based upon this response, Plaintiff may have believed that all required documentation had been sent to Central Office.

The Third Circuit has held that interference with an inmate's attempts at exhaustion may impact the *availability* of the administrative remedy process within the meaning of 42 U.S.C. § 1997e. Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003) ("A grievance procedure is not available even if one exists on paper if the defendant prison officials somehow prevent a prisoner from using it."). See also McKinney v. Guthrie, 2009 WL 274159, at *1 (3d Cir. 2009) ("[A]n administrative remedy may be unavailable if a prisoner is prevented by prison authorities from pursuing the prison grievance process."). From the record presently before this Court, it is unclear whether certain administrative remedies were available to Plaintiff, thereby creating a disputed material issue of fact. Accordingly, the motion to dismiss/motion for summary

---

[4] DC-ADM 804(f) – (j) provides that at the Final Review level, a failure to provide all required documentation will result in dismissal of the appeal.

9

judgment will be denied in this regard. The issue of exhaustion of administrative remedies pursuant to the PLRA may be revisited upon a more fully developed record.

### D) Eighth Amendment –Exposure to Chemical Agent

Next, Defendant Campbell moves to dismiss based upon Plaintiff's failure to state an Eighth Amendment claim based upon the exposure to the second-hand pepper spray.

Under the Eighth Amendment, prisoners are constitutionally protected from cruel and unusual punishment. Farmer v. Brennan, 511 U.S. 825 (1991). But, "not all deficiencies and inadequacies in prison conditions amount to a violation of an inmate's constitutional rights." Booth v. King, 228 Fed. Appx 167, 171 (3d Cir. 2007). Cruel and unusual punishment will only be found "where, viewing the totality of the conditions in the prison, the inmate's conditions of confinement, alone or in combination, deprive him of the minimal civilized measure of life's necessities." Id. quoting Tillery v. Owens, 907 F.2d 418, 426-27 (3d Cir. 1990). See also Askew v. Cropsey, 2009 WL 799235, at * 4 (E.D. Mich.) citing Estelle v. Gamble, 429 U.S. 97, 103-04 (1976) ("[A]lthough under the Eighth Amendment, a prisoner has a constitutional right to protection from dangerous environmental conditions in his living quarters, that right is violated only when corrections officials are deliberately indifferent to the prisoner's serious needs.").

In the non-medical context, the Eighth Amendment imposes a duty upon prison officials to provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must "take reasonable measure to guarantee the safety of the inmates." Hudson v. Palmer, 468 U.S. 517, 526-27 (1984). However, "to the extent that prison conditions are restrictive and even harsh, they are part of the penalty

that criminal offenders pay for their offenses against society." Rhodes v. Chapman, 452 U.S. 337, 347 (1981).

To make out an Eighth Amendment claim based on prison conditions, the plaintiff must show "he has suffered an objectively, sufficiently serious injury [or deprivation], and that prison officials inflicted the injury with deliberate indifference." Farmer, 511 U.S. at 834. The first prong of the Farmer test is an objective one: Plaintiff must demonstrate that he has been incarcerated under conditions posing a substantial risk of serious harm. 511 U.S. at 834. The second prong of the Farmer test is a subjective one, requiring plaintiff to demonstrate that defendants acted with deliberate indifference. To establish deliberate indifference: 1) a prison official must know of and disregard an excessive risk to inmate health or safety; 2) the official must be aware of facts from which an inference could be drawn that a substantial risk of serious harm exists, and 3) the official must also draw the inference. Id. at 837. Thus, "deliberate indifference describes a state of mind more blameworthy than negligence," and requires "more than ordinary lack of due care for prisoner's interests or safety." Id. at 835.

Here, at its core, Plaintiff's claim is that he was exposed to second-hand pepper spray during Defendant Campbell's attempts to subdue another inmate and that he suffered physical injuries as a result. Furthermore, Plaintiff claims that Campbell acted recklessly in using the chemical agent before turning off the ventilation system. On the facts alleged in the complaint, Plaintiff has stated an Eighth Amendment claim based upon the chemical exposure. Plaintiff faces a heavy burden in proving the elements of this claim at trial or in the face of a motion for summary judgment, but he will be allowed to proceed through the discovery phase of this litigation. See Allen v. Bosley, 253 Fed.Appx 658 (9th Cir. 2007); Gargan v. Gabriel, 50

Fed.Appx 920 (10th Cir. 2002); Askew, 2009 WL 799235; Johnson v. Palockovich, 2007 WL 431890 (M.D. Pa.).

### E) Eighth Amendment – Denial/Delay of Medical Treatment

Finally, Defendant Campbell moves to dismiss based upon Plaintiff's failure to state an Eighth Amendment claim of deliberate indifference to a serious medical need.

In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). The standard is two-pronged, "[i]t requires deliberate indifference on the part of prison officials and it requires that the prisoner's medical needs be serious." West v. Keve. 571 F.2d 158, 161 (3d Cir. 1978). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

"To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm." Giles v. Kearney, 571 F.3d 318, 330 (3d Cir. 2009). Deliberate indifference may be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer, 991 F.2d at 68, or "persistent conduct in the face of resultant pain and risk of permanent injury" White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

Here, Plaintiff's allegations of the denial and/or delay of medical treatment for four hours while he was sneezing and coughing up blood are sufficient to state a claim of deliberate

indifference to a serious medical need. <u>Passmore v. Iannello</u>, 2013 WL 625409 (W.D. Pa.) <u>aff'd</u> <u>Passmore v. Ianello</u>, 528 Fed.Appx 144 (3d Cir. 2013). In order to prevail on this claim, Plaintiff will have to prove his allegations after a period of discovery. The motion to dismiss will be denied in this regard.

      An appropriate Order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN ALEXANDER, | ) | |
| Plaintiff, | ) | Civil Action No. 13-21Erie |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN CAMPBELL, | ) | Magistrate Judge Baxter |
| Defendant. | ) | |

# O R D E R

AND NOW, this 20th day of February, 2014;

IT IS HEREBY ORDERED that Defendant's motion to dismiss [ECF No. 10] be DENIED.

A Case Management Order will be issued separately.

<u>/s/ Susan Paradise Baxter</u>
SUSAN PARADISE BAXTER
United States Magistrate Judge